UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LAWRENCE B. HILTZ,<br><br>       Defendant. | No. 98-CR-10097-PBS |

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO VACATE
RESTITUTION AND DEFENDANT'S EMERGENCY MOTION TO CEASE
COLLECTION AND ENFORCEMENT**

CABELL, U.S.M.J.

**INTRODUCTION**

Defendant Lawrence Hiltz was convicted in federal court on charges of conspiracy and trafficking counterfeit computer goods and as part of his sentence was ordered to make restitution of over $1 million to two specific corporate victims. He moves to vacate the restitution order and have certain payments refunded because the two identified corporate victims no longer exist. (D. 172). He moves relatedly to bar the government from taking any action to collect future restitution payments from him. (D. 191). For the reasons explained below, I recommend that both motions be denied.

**RELEVANT BACKGROUND**

In 2000 Hiltz pled guilty to one count of conspiracy and 34 counts of trafficking in counterfeit computer components. (D.

152).   He  was  sentenced  *inter  alia*  to  37  months  in  prison  and

ordered  to  pay  restitution  of  approximately  $880,000  to  Matrix

Marketing  (Matrix),  the  principals  of  which  were  Michael  R.  Clark

and  Jeffrey  Londres.    (D.  182-1).    He  was  also  ordered  to  pay

$150,000  to  Applied  Innovations  (Applied).    (Id.).    Applied  was

dissolved  before  the  restitution  payments  commenced,  however,  and

it  appears  (although  it  is  not  entirely  clear)  that  the  entire

restitution  amount  was  then  directed  to  Matrix.    (D.  172-1,  pp.

14-15).

Following  his  release  from  prison,  the  defendant  began  making

restitution  payments  through  the  Clerk's  Office  under  an

arrangement  with  the  Probation  Office.    (D.  176,  p.  2).    The

payments  varied  but  for  the  last  several  years  were  in  the  range

of  $65-$100  per  month.    (Id.,  Exh.  B.).

The  defendant  claims  that  he  discovered  in  mid-2015  that  his

entire  payment  had  not  been  going  to  Matrix  at  all  but  was  instead

going  to  a  company  named  Liquid,  PC  (Liquid).[1]    (Id.,  Exh.  B).    The

United  States  Attorney's  Office  (USAO)  informed  the  defendant  that

Liquid  was  the  company  formerly  known  as  Matrix  but  the  defendant

contends  that  his  investigation  of  Liquid's  incorporation

documents  did  not  confirm  this.    (D.  172,  Exh.  B).

---

[1] The company is now incorporated as Liquid PC, Inc.

In or around July 2015 the defendant apparently sent correspondence to the USAO's Financial Litigation Unit (FLU) noting the discrepancy, but he continued to pay restitution of $100 per month under a new agreement.[2]  (D. 176, Exh. A, B).

In February 2018, the USAO canceled that payment plan because the defendant's debt had recently been added to the Treasury Offset Program (TOP).  Under the TOP, the government began offsetting approximately $322.00 per month from the defendant's monthly Social Security Disability benefits.  (Id., Exh. D).

The defendant, contending that he should not have to make restitution payments where neither original corporate victim (Matrix or Applied) still existed, filed the present motion to vacate after unsuccessfully protesting the increase to both the TOP and the USAO.

On October 1, 2018, the court ordered the government to explain why Liquid was entitled to the restitution payments, particularly where the court had not ruled that Liquid was a substitute victim, and where it appeared that the Clerk's Office had apparently made the substitution on its own in 2005.  (D. 178).

The government explained that Liquid was essentially Matrix in another form.  More specifically, it explained that the Clerk's Office had contacted Matrix in 2005 for a proper mailing address

---

[2] The letter is undated but states that the defendant's July 2015 payment is enclosed.

because Matrix was listed as a victim of the defendant and the Clerk's Office required confirmation of Matrix's proper mailing address prior to forwarding payment.  It turned out that Matrix had previously merged with two entities in 2002, including Great Bay Micro Inc., owned also by Clark and Londres, and Data Security Services Corp., owned by Loretta Sivret ("Sivret").  Matrix subsequently ceased to exist, but since Clark and Sivret had earlier in April 2000 incorporated Liquid, Clark responded that all payments should be made to Liquid.  The Clerk's Office verified that Matrix had indeed been dissolved in 2004 and thus began making payments to Liquid.  The government also submitted a letter from Clark stating that he was and has been sharing the restitution payments with Londres.  (D. 182).

In September 2019, the defendant filed an emergency motion to order the FLU to cease enforcement and collection actions regarding his restitution payments, at least until the motion to vacate has been resolved.

### ANALYSIS

The defendant does not indicate what authority he relies on in seeking relief but the court presumes he petitions for writ of error coram nobis.[3]  Pursuant to the All Writs Act, federal courts

---

[3] A federal court may entertain a petition for habeas relief pursuant to 28 U.S.C. §§ 2241 or 2255 in behalf of a federal prisoner challenging the fact or execution of their sentence.  That avenue is not available to the defendant here, however, because he is no longer a prisoner in custody.  Even if he were, the monetary components of a criminal sentence, such as a fine or

have the authority to grant writs traditionally available at common law.  See 28 U.S.C. § 1651; *United States v. Sawyer*, 239 F.3d 31, 37 (1st Cir. 2001).  The writ of error coram nobis is available at common law to correct errors of fact that affect the validity and regularity of a judgment.  *United States v. Morgan*, 346 U.S. 502, 507 (1954).  The writ of error coram nobis is an "extraordinary remedy" that "issues only in extreme cases," *United States v. Denedo*, 556 U.S. 904, 916 (2009), and typically is available only when habeas relief is unwarranted because the petitioner is no longer in custody.  *Trenkler v. United States*, 536 F.3d 85, 98 (1st Cir. 2008).

To secure coram nobis relief, a petitioner must (1) explain why he failed to seek relief from the judgment any earlier, (2) establish that he "continues to suffer significant collateral consequences from the judgment," and (3) show that the judgment was the result of "an error of the most fundamental character." *United States v. George*, 676 F.3d 249, 254 (1st Cir. 2012). Moreover, "it is not enough for a coram nobis petitioner to show that he can satisfy the elements of the tripartite test: he must also show that justice demands the extraordinary balm of coram

---

restitution order, generally do not restrict liberty so severely as to satisfy the custody requirement and thus may not be collaterally attacked through a habeas proceeding.  *See United States v. Michaud*, 901 F.2d 5, 7 (1st Cir. 1990); *see also Smullen v. United States*, 94 F.3d 20, 25-26 (1st Cir. 1996) (even a defendant in custody cannot use § 2255 to attack collaterally a monetary obligation).

nobis relief."   *Id.* at 255 (citing *Hager v. United States*, 993
F.2d 4, 5 (1st Cir. 1993)).   Applied here, Hiltz is not entitled
to coram nobis relief because he cannot satisfy the second and
third requirements.

To begin, the court presumes that Hiltz could meet the first
requirement where he contends that he did not know that his
restitution payments were not going to Matrix or Applied until he
happened to contact the Clerk's Office in mid-2015 about a payment
issue.

With respect to the second requirement, however, the
defendant cannot show that he continues to suffer significant
collateral consequences from the judgment.  On the contrary, courts
have held that an ongoing financial requirement, such as the
defendant's monthly payment obligation here, does not constitute
a continuing "significant collateral consequence."   *See e.g.,*
*United States v. Iacaboni*, 592 F. Supp. 2d 216, 221 (D. Mass.
2009); *United States v. Sloan*, 505 F.3d 685, 697 (7th Cir. 2007)
(concluding that a garnishment order to pay an allegedly excessive
amount of restitution did not create a continuing injury as
required for a writ of error coram nobis).

Even assuming in hindsight that the manner in which Liquid
was substituted as a restitution victim might have been managed
differently, the defendant demonstrably has not suffered any
"significant collateral consequences" as a result of the

substitution where he does not here challenge the amount of restitution he was ordered to pay to Matrix, and it is apparent that the two principals of Matrix, Clark and Londres, are in fact receiving the restitution payments even though the payments ostensibly are going to Liquid.

Finally, the defendant cannot for the same reasons meet the third requirement of demonstrating an "error of the most fundamental character." As noted above, the decision to direct restitution payments to Liquid was arguably not erroneous at all where the principals of the original restitution victim are receiving the restitution payments. In any event, courts in this district and elsewhere have consistently held that "neither (a) a factual error as to the amount of restitution nor (b) a legal error in the manner of determining restitution is generally so 'fundamental' ... as to qualify for the writ." *Maguire v. United States*, No. 05-cv-12508-GAO, 2008 WL 3523175, at *1 n.1 (D. Mass. Aug. 12, 2008) (citing *United States v. Morgan*, 346 U.S. 502, 512 (1954) and *United States v. Mayer*, 235 U.S. 55, 69 (1914)); *accord Iacaboni*, 592 F. Supp. 2d at 221; *see also Sloan*, 505 F.3d at 697 (ruling that allegedly excessive forfeiture award "is not of the 'most fundamental character' or one that amounts to a miscarriage of justice"); *United States v. Keane*, 852 F.2d 199, 204 (7th Cir. 1988) (holding that a criminal fine is not sufficiently different from a civil judgment to, on its own, warrant coram nobis relief);

7

*Lowery v. United States*, 956 F.2d 227, 229 (11th Cir. 1992)(holding that an alleged sentencing error was not "fundamental" to the validity of the underlying conviction).   Accordingly, even assuming *arguendo* it was error to redirect the defendant's restitution payments to Liquid, it would not entitle the defendant to coram nobis relief.   Consequently, there is no basis to vacate the order of restitution, and also no basis to order the USAO to cease collecting restitution payments from the defendant.[4]

**CONCLUSION**

For the foregoing reasons, the (1) Defendant's Motion to Vacate Restitution (D. 172) and the (2) Defendant's Emergency Motion to Order the U.S. Attorney Financial Litigation Unit to

---

[4] Hiltz raises two additional claims meriting brief attention in closing.  First, he appears to argue through his reply to the government's opposition that the original order of restitution imposed in 2000 violated the ex post facto clause, U.S. Const. art. I, § 9, because the amount of restitution was calculated under the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. §3663A, which was not yet applicable when his charged criminal activity ceased.  Hiltz contends it should have instead been calculated pursuant to the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663, which requires findings of fact before imposing restitution.  But Hiltz would not be entitled to coram nobis relief on this claim, even assuming he is correct, because he cannot explain why he failed to seek relief at any point over the last 20 years.  Second, to the extent Hiltz takes issue with the increased restitution payments that are being deducted from his monthly disability benefits through the TOP, he may always seek review and relief under 28 U.S.C. § 3204(b) or 18 U.S.C. § 3664(k). *See United States v. Chorney*, 453 F. App'x 4 (1st Cir. 2011) (per curiam) (raising possibility of seeking revised payment under § 3204); *United States v. Bernard*, 351 F.3d 360 (8th Cir. 2003)(§ 3664 appropriate remedy for defendants challenging restitution order after release from custody).   The USAO has represented that it will evaluate the appropriateness of a modified payment plan once he files a financial statement.   The defendant may well find it more beneficial to pursue relief through that avenue than through further litigation.

Cease All Collection and Enforcement Actions for Restitution Against the Defendant (D. 191) should be **DENIED**.[5]

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:   February 28, 2020

---

[5] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376 (1st Cir. 1982); *see also Thomas v. Arn*, 474 U.S. 140 (1985).